UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

PYCSA PANAMA, S.A.,

    Plaintiff,

vs.

TENSAR EARTH TECHNOLOGIES, INC.,
a Georgia corporation,

    Defendant.

_____/

CASE NO. **06 - 20624**
**CIV - GOLD**

MAGISTRATE JUDGE
TURNOFF

### COMPLAINT

Plaintiff, PYCSA PANAMA, S.A. ("Pycsa"), a Panamanian corporation hereby sues the Defendant TENSAR EARTH TECHNOLOGIES, INC. ("Tensar"), a Georgia corporation and alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1.    This action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court has jurisdiction under 28 U.S.C. § 1332.

2.    Plaintiff, Pycsa is a Panamanian corporation with its principal place of business in Panama City, Panama. During all times relevant hereto, Pycsa utilized its affiliate office in Miami, Florida to receive mail in the United States and to coordinate the procurement and shipment of U.S. materials, including those materials utilized by Tensar in implementing the Tensar Mesa® retaining wall system at issue herein.



*Pycsa v. Tensar*

3.      Defendant Tensar is a corporation organized and existing under the laws of the State of Georgia, which is authorized to and is doing business in the State of Florida. Its principal place of business is Atlanta, Georgia.

4.      Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

5.      This action is to recover for an unreasonably dangerous and faulty retaining wall system sold by Tensar called the Tensar Mesa® retaining wall system.  Even if Tensar's components had not been faulty and improperly implemented, the Tensar Mesa® retaining wall system designed and sold by Tensar was wholly insufficient for the intended purpose.  The result of this faulty and dangerous product was the loss of three lives and the considerable financial and reputational damage to plaintiff.

**A.      Tensar and the Tensar Mesa® Retaining Wall System**

6.      Tensar designs, manufacturers, markets and implements the Tensar Mesa® retaining wall system, which, per Tensar's marketing materials, is a retaining wall system featuring three interlinked components: proprietary mechanical polymeric connectors (the "Connectors"), high-density polyethylene uniaxially drawn geogrids used for soil reinforcement (the "Geogrid") and proprietary pre-cast modular block facing elements (the "Blocks").

7.      Connectors are plastic components designed to connect Blocks together with surrounding Blocks and to connect the wall face with the Geogrids stretching out into the backfill soil.  For this purpose, Connectors have a number of "teeth" designed to lock into

2

*Pycsa v. Tensar*

the Block or Blocks immediately below the Connector.  In addition, the Connectors connect

with the Geogrid component (and the Block or Blocks above the Connector) through a

number of "flags" which rise from the Connector.  These flags are intended to link the

Geogrids to the wall face and to tie the Connector to the Block or Blocks immediately

above the Connector.

      8.     Tensar's marketing and design materials indicate that the Tensar Mesa®

retaining wall system employs three styles of Connector (Standard, High Performance and

Flagless).  According to Tensar's marketing materials, the Standard Connectors are

approximately three inches in length with four teeth and two flags.  The High Performance

Connectors are more than four times the length with 17 teeth and 14 flags.  The Flagless

connector is four and a half inches long with six teeth and no flags.  A particular wall

design may not employ Connectors on every course of Blocks forming the wall face.

      9.     Tensar marketing and design materials indicate that the Tensar Mesa®

retaining wall system employs Blocks from five possible styles (Standard, High

Performance, Cap and Corner, SL and Landscape).  The design of the Blocks marketed

and tested by Tensar indicate that the Blocks are to have certain recesses and grooves to

allow their stacking into a retaining wall and to accommodate the Connector and Geogrid

components of the Tensar Mesa® retaining wall system.

      10.    The Geogrid is a grid or netting of plastic material which is designed such

that the netting will be held in place at the wall face by the flags found on the Connectors

linking the individual Blocks of the wall face.  The length of the Geogrid is then rolled away

3

from the wall and covered with backfill.  Geogrids are attached to the wall face at set heights during the assembly of the retaining wall.  A particular wall design may not employ Geogrids on every course of Blocks forming the wall face, nor on every course utilizing a Connector.

11.    The intent of the Tensar Mesa® retaining wall system is that the three components work together to form a retaining wall suitable for the project.

12.    A retaining wall utilizing the Tensar Mesa® retaining wall system is implemented in stages.  To begin a wall, a course of Blocks is laid end to end.  Depending upon the design implementation of that particular wall, either (a) another row of Blocks will be placed directly on top; (b) Connectors will be inserted into the appropriate receptacles cast into the Blocks and another row placed on top of the Connectors thereby tying the two rows together; or (c) Connectors will be inserted into the first row, one edge of a Geogrid will be placed over the Connectors' flags, the Geogrid will be unrolled away from the wall face, the next row of Blocks will be placed, and finally dirt will be compacted over the unrolled Geogrid.

13.    The design demands of a particular implementation of the Tensar Mesa® retaining wall system dictate which components are to be utilized, i.e. taller walls with higher structural demands require use of higher performance components.  The design parameters also dictate the vertical spacing and number of connectors and geogrids.

14.    Tensar, or its exclusive agent, has complete control over the design and implementation of the Tensar Mesa® retaining wall system.

4

*Pycsa v. Tensar*

15.   Tensar's marketing materials state that Tensar assumes responsibility for the internal stability of the Tensar Mesa® retaining wall system.

16.   Tensar's marketing stressed its experience and expertise in implementing the Tensar Mesa® retaining wall system throughout Latin America and the Caribbean. Tensar has advertised its successes at winning contracts in Puerto Rico, Guatemala, Panama, Venezuela, Chile and Brazil.

17.   Indeed, Tensar provided marketing materials crowing about its recent implementation of eight retaining walls in Panama. The materials stated that Tensar:

> was awarded the job and began work in November of 1999. The high profile, large –scale project was completed in February of 2000. One reason for the quick turnaround was [Tensar's] ability to have materials on site almost immediately. This was possible because the Mesa® Licensee, Fundaciones, manufactures the blocks locally and was able to deliver them on demand.

18.   Further, Tensar's materials stated that the Ministry of Public Works favorably viewed the use of the Tensar Mesa® retaining wall system. Tensar asserted that the Ministry of Public Works, "couldn't be happier with the results."

19.   Tensar's website states that anyone interested in purchasing the Tensar Mesa® retaining wall system should call Tensar at a "404" area code, presumably its Atlanta headquarters, or to contact a listed Tensar representative. The contact listed by Tensar for Panama is Fundaciones, S.A.

20.   The Tensar website also states that as part of their service of selling the Tensar Mesa® retaining wall system they will provide stamped drawings complete with precise construction details encompassing the particular needs of the site.

5

21.     Tensar asserted to prospective purchasers that its Tensar Mesa® retaining wall system and its components had been tested in accordance with the Tensar Quality Assurance Program.  Tensar also provided test data purporting to show the Tensar Mesa® retaining wall system's capabilities and fitness for purpose.

22.     Further, Tensar provided a technical evaluation report of the Tensar Mesa® retaining wall system.   The technical evaluation report states that it was conducted based on data provided by Tensar, the "developer, designer and supplier" of the Tensar Mesa® retaining wall system.

23.     Through  the  provision  of  the  report,  Tensar  asserted  that  sufficient connection capacity testing had been performed to qualify its Tensar Mesa® retaining wall system for the intended implementation.  In addition Tensar asserted that its components had been tested to meet the necessary standards.

**B.     Pycsa's Contract to Build and Operate the Northern Corridor Highway**

24.     Beginning in 1994, Pycsa was granted a contract with the country of Panama to design, build and operate a toll highway system in Panama City (the "Northern Corridor Highway").   Pycsa,  through  its  affiliate,  also  acted  as  the  general  contractor  for  the construction project.

25.     The contract was structured such that Pycsa was to recoup its construction costs through tolls on the finished highway for a set period of time.  Delays in completion of the highway, therefore, reduced Pycsa's ability to regain its investment.  In simple terms, if the road is not open, it cannot fund the construction costs.

6

*Pycsa v. Tensar*

26.     The Northern Corridor highway traverses the San Miguelito district of Panama City, at one point crossing over the existing La Palmita roadway, (the "La Palmita crossing").  The La Palmita crossing required the building of a reinforced concrete bridge. Similar bridge crossings were planned at Martin Luther King and La Fula roadways.

27.     The bridge crossings, in turn, required the use of some retaining wall system. Pycsa sought to purchase such a product from an outside vendor.

## C.     The Project and Tensar's Proposed Implementation of the Tensar Mesa® Retaining Wall System

28.     In 2002, Pycsa was approached by representatives of Tensar to provide a retaining wall system for the reinforced concrete bridge spans.

29.     Tensar stated that its Tensar Mesa® retaining wall system would be an efficient and cost-effective product to meet the needs of the bridge project.  As part of its marketing effort, Tensar provided Pycsa with testing data, design analysis and additional purported evidence of the Tensar Mesa® retaining wall system's fitness for the crossing.

30.     Tensar assured Pycsa that the Tensar Mesa® retaining wall system could be designed to meet Pycsa's needs at the La Palmita crossing.

31.     In bidding for the project, Tensar represented to Pycsa that Fundaciones was its exclusive agent in Panama and was fully qualified to implement the Tensar Mesa® retaining wall system.  Tensar represented that the components of the Tensar Mesa® retaining wall system had been thoroughly tested and were capable of meeting the project's requirements.   In addition, Tensar pointed to its other allegedly successful

7

implementations of the Tensar Mesa® retaining wall system in Panama and around the world.

32. Tensar's Tensar Mesa® retaining wall system was utilized in the two bridge abutment projects at the La Palmita crossing. Similar abutments using the Tensar Mesa® retaining wall system were implemented at two other Northern Corridor Highway crossings, Martin Luther King and La Fula.

33. Tensar agreed to provide the system components to be installed by its exclusive agent in Panama, Fundaciones. The construction materials for the wall, the wall itself and the first 1.5 meters of fill behind the wall were to be under the exclusive control of Tensar/Fundaciones. Pycsa was to handle the mass earth fill and compaction for the area beyond 1.5 meters from the wall. Pycsa's work in this extended area was to be under the supervision and control of Tensar/Fundaciones. Pycsa was not allowed to have any involvement in the implementation of the wall itself or the first 1.5 meters of mass earth fill (the "Tensar Exclusive Zone").

34. Pycsa through its subsidiary charged with administering the construction made payments directly to Tensar in reliance on the receipt of Tensar geogrids and connectors free of defects and deficiencies and appropriate to be used in the Tensar Mesa® retaining wall system designed by Tensar for the three Northern Corridor Highway crossings and as specified in the plans for those three crossings.

8

*Pycsa v. Tensar*

35.    The design drawings for the bridge abutments employing the Tensar Mesa®
retaining wall system bore the stamp or seal of Tensar indicating the approval of Tensar
and its assurance that the plans were correct.

36.    Pycsa was explicitly instructed not to perform any work in the Tensar
Exclusive Zone and any work performed inside of the Tensar Exclusive Zone was
performed under the supervision of Tensar/Fundaciones.

37.    Tensar provided Pycsa with a notarized letter indicating that Fundaciones is
Tensar's exclusive Panamanian distributor for all Tensar products, including the Tensar
Mesa® retaining wall system, and that engineer Carlos Barrera of Fundaciones is fully
qualified by Tensar to conduct the design, fabrication and installation of Tensar products.

38.    Tensar provided Pycsa with a Construction and Quality Control Manual (the
"Manual").   The Manual noted that a Tensar Mesa® retaining wall system technical
representative may assist the contractor and the inspection staff.   The Manual further
provided that a technical representative would be on-site at the start of construction.

39.    The Manual indicates that the implementation of the Tensar Mesa® retaining
wall system requires that the Connector fully engage the appropriate receptacle in the
Block.

40.    Tensar also provided Pycsa with an Installation and Special Considerations
Manual.  The Special Considerations Manual notes that the Tensar Mesa® retaining wall
system is unique because the Connector creates a positive, mechanical connection
between the wall face and the reinforcement providing unsurpassed structural integrity.

9

Tensar asserted that it is that positive, mechanical connection that greatly reduces the chance of wall failure even under the most severe conditions.

41.     The Special Considerations Manual notes that it is important that the Blocks remain level from front to back and side to side.   The Special Considerations Manual further states that small variations can be resolved through shimming but warns against placing shims near the face of the Blocks.

42.     The Geogrids and Connectors used in the Tensar Mesa® retaining wall system implemented at the La Palmita crossing were manufactured in the United States and supplied directly by Tensar.

43.     The Blocks were manufactured locally in Panama by a company referred by Tensar and completed under its direction.  Pycsa was informed by Tensar/Fundaciones that the supplier had previously produced Blocks for another implementation of the Tensar Mesa® retaining wall system in Panama.    On information and belief, Tensar/Fundaciones provided the mold for the Blocks.

44.     The design proposed by Tensar for the La Palmita implementations of the Tensar Mesa® retaining wall system was to utilize High Performance Blocks and Connectors per the design analysis prepared by Tensar.

45.     This design analysis was prepared by Tensar, as well as its agent, using the MesaPro 2.10 software.

46.     The particular implementation of the Tensar Mesa® retaining wall system which failed at La Palmita was to have a total wall height of 12.2 meters and incorporate a

10

total of 25 Mesa® Geogrid layers connected to the Block facing at various vertical spacings and coverage ratios.

47.    The Tensar Mesa® retaining wall system actually implemented by Tensar and its exclusive agent differed from the drawings and design analysis in several key areas.

48.    First and most significantly, Tensar failed to use the High Performance Blocks required by its design analysis and plans.  Rather, the project was implemented using Blocks that do not match any known, official Tensar design.

49.    The blocks actually used were of different dimensions, lower in weight, incompatible with the Connectors used, and were not level resulting in a need for excessive shimming to compensate for the unlevel surfaces.

50.    On information and belief, the use of these new Blocks was approved by Tensar prior to the start of wall assembly.

51.    On information and belief, the new Blocks were not tested and Tensar did not seek permission to substitute the new design from either the Ministry of Public Works or Pycsa.

52.    Second, the implementation did not utilize the High Performance Connectors called for in the design analysis.  Pycsa ordered the Connectors designated by Tensar. However, Tensar shipped and implemented a different connector design in the finished product.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

53.     According to the connection strength tests contained in Tensar's marketing materials, the peak connection strength is reduced by 40 to 45% when downgrading from a High Performance Connector to a Standard Connector.

**D.     Tensar's Product and Its Failure**

54.     The abutments at La Palmita implemented utilizing the Tensar Mesa® retaining wall system failed catastrophically on two occasions.   Both failures resulted in wall collapses.

55.     First, on December 14, 2003, the southeast wall of the abutment suffered a catastrophic failure of the Tensar Mesa® retaining wall system resulting in the death of three children that had been playing in a drainage culvert that passed below the Tensar Mesa® retaining wall system.

56.     Second, on September 16, 2004 another segment of the Tensar Mesa® retaining wall system at La Palmita collapsed.   No injuries resulted from this failure.

57.     After these collapses the Panamanian government insisted that all three crossings built using the Tensar Mesa® retaining wall system be demolished and rebuilt by other methods.

58.     The collapses were due to multiple failings of the design and implementation of the Tensar Mesa® retaining wall system.   These numerous deficiencies caused the retaining walls to fail catastrophically in a rapid, avalanche-like mode.

59.     Had the Tensar Mesa® retaining wall system been properly designed and implemented using appropriate components, the retaining walls would not be expected to

12

*Pycsa v. Tensar*

fail under the conditions present at the time of the collapse. The failures were not caused by extreme loadings, excessive rainfall, unforeseen groundwater and subsurface conditions, or improper mass earth fill compaction by Pycsa.

60.    The two failures were similar and each occurred in the Block facing and the area of hand-compacted fill immediately behind the wall in the Tensar Exclusive zone.

61.    The wall facing failed at the connection system between the Blocks, Connectors and Geogrids. Failure mechanisms included broken and poorly cast Blocks, broken and improper Connectors, and Geogrids that ruptured at the rear edge of blocks and at connectors.

62.    The Blocks cracked in multiple areas allowing them to lose their integrity, break apart and become detached from the Connectors.

63.    The Connectors used to attach the Blocks to Geogrids or other Blocks were broken or bent allowing blocks to shift or simply pop out of the wall face.

64.    The Geogrids stretched and tore at and around the interface with the Connector flags, allowing the Blocks to shift or simply pop out of the wall face.

65.    As the Blocks began to disintegrate, shift, or pop out of the wall face, the gravel and backfill began to flow out of the opening in the wall. This resulted in a lack of support for surrounding blocks, which, in turn, quickly and catastrophically unraveled the entire Tensar Mesa® retaining wall system.

13

*Pycsa v. Tensar*

66.     The design of the Tensar Mesa® retaining wall system implemented in Panama was deficient in several areas, including defective Block design, improper Connector choice and design, and a lack of connection strength testing.

67.     Put simply, the Tensar Mesa® retaining wall system, was not up to the task it was asked to do.  This failure was despite assurances from Tensar that their product was appropriate for the needed retaining walls.

68.     Moreover, there were deficiencies in the components supplied by Tensar to implement its faulty design.  The Blocks utilized by Tensar were of poor quality, poor construction and were of insufficient mass and design for the intended use.   The Connectors supplied by Tensar were insufficient for the intended use.

69.     Finally, the implementation of the components and design was faulty. Tensar's workmanship and that of its exclusive licensee was of poor quality. The fill for the area within its exclusive control (1 to 1.5 meters from the wall) was inadequately compacted.  The employed Connectors were damaged and unable to perform to their specifications.  The Blocks were placed poorly requiring, along with their generally poor construction quality and design, excessive shimming.  The drainage system installed by Tensar and their exclusive licensee was poorly implemented.

70.     The blocks produced from the mold supplied by Tensar were not of the same design and construction as the blocks marketed by Tensar and shown on the design created by Tensar for the Tensar Mesa® retaining wall system.  The blocks made it impossible for the retaining wall to be constructed without excessive shimming thereby

14

compromising the integrity of the Tensar Mesa® retaining wall system and damaged the connectors.   Moreover, the block design had not been tested by Tensar.

71.    The connectors supplied by Tensar were not of the same type required by the plans provided by Tensar for the Tensar Mesa® retaining wall system

72.    The implementation of these faulty components by Tensar's agent in Panama was well below the standards called for by the plans.

73.    The Tensar Mesa® retaining wall system and its components were defectively and deficiently designed and manufactured, and were implemented improperly into the three road crossings.

**E.    Tensar's Effort To Influence Government Officials and the Investigation**

74.    Immediately following the first collapse in 2003, Tensar officials began attempts to "shift the blame" to other parties, namely Pycsa and its affiliates.   Tensar officials manipulated the investigators from the Panamanian Ministry of Public Works. Tensar officials heavily influenced the investigation and pressured the Ministry to release a report within a staggering 10 days of the accident.

75.    On information and belief, Tensar provided the lab reports upon which the Ministry purported to make its determination.

76.    The rushed report came to the unusual conclusion that the retaining walls were brought down, not by the inadequate design, crumbling Blocks or faulty Connectors, but rather by insufficient compaction in dirt far away from the wall.

15

*Pycsa v. Tensar*

77.     The report takes the position that the numerous design and material defects were not the primary cause of the collapse but rather places the blame on soil saturation unique to this particular bridge abutment.

78.     The report created under Tensar's influence, notes that similar walls employing the Tensar Mesa® retaining wall system "have been previously utilized in the Republic of Panama with satisfactory structural behavior."

79.     The report does not explain why, if the cause of the La Palmita failure was unique to that particular wall's drainage, the Ministry subsequently ordered the destruction of <u>all</u> retaining walls employing the Tensar Mesa® retaining wall system on the Northern Corridor highway project.

80.     Finally, the report ignores, but does not foreclose, that a design flaw or product defect was the cause of the La Palmita collapses

## COUNT I - STRICT LIABILITY FOR PRODUCTS LIABILITY

81.     Plaintiff Pycsa repeats and realleges paragraphs 1 through 80 above.

82.     Tensar is in the business of designing, manufacturing and selling Tensar Mesa® retaining wall systems and their components such as the Tensar Mesa® retaining wall system giving rise to this cause of action.

83.     In its intended use, the Tensar Mesa® retaining wall system is a product.

84.     Tensar placed the Tensar Mesa® retaining wall system and/or its components into the stream of commerce with knowledge that the design, implementation

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

and components would be within exclusive use and control of Tensar and its agent—and not be inspected by Pycsa for defects.

85.    Tensar placed the particular implementation of the Tensar Mesa® retaining wall system and/or its components into the stream of commerce with knowledge that the components and/or system had not been properly tested.

86.    The Tensar Mesa® retaining wall system and its component elements were defective and unreasonably dangerous in that the defective manufacture and design were insufficient to perform their intended purpose as a bridge abutment.

87.    The defective Tensar Mesa® retaining wall system and its component elements were the direct and proximate cause of the extensive damages which Pycsa has suffered, including, but not limited to, death of bystanders, reconstruction costs, demolition costs, lost revenues, diminished reputation, administration over cost, and idled machinery.

88.    As a result of the defective and deficient design, manufacturing, and implementation, Pycsa has suffered damages including but not limited to cost of destruction and replacement of faulty Tensar Mesa® retaining wall system with non-faulty alternative at La Palmita, destruction or diminishment of value of its reputation as a contractor in Panama, cost of destruction and repair of the other bridge abutments utilizing the Tensar Mesa® retaining wall system, loss of construction time and stopped machinery costs, lost revenues due to delays in opening and operating tollway, and other damage that naturally and proximately resulted from the faulty product described herein.

17

*Pycsa v. Tensar*

WHEREFORE, Pycsa respectfully requests this Court to enter judgment in its favor for damages against Defendant Tensar, together with costs and interest and other such relief as this Court deems just and appropriate under the circumstances.

## COUNT II- NEGLIGENCE

89.     Plaintiff Pycsa repeats and realleges paragraphs 1 through 80 above.

90.     Tensar had a duty to ensure that the Tensar Mesa® retaining wall system it designed would be reasonably safe for its intended use and would not cause harm to Pycsa, the project or the public.

91.     Tensar knew, or should have known, that the Tensar Mesa® retaining wall system would be used in the manner implemented and knew or should have known that design of the Tensar Mesa® retaining wall system as implemented would cause severe damage because of negligent manufacturing of components, negligent design of the implementation, negligent implementation by Tensar's exclusive agent and the resulting defects and deficiencies.

92.     Notwithstanding the actual or imputed knowledge of Tensar, defendant Tensar was negligent in, but not limited to, the following particulars:

a.      Failure to design and manufacture the components of the Tensar Mesa® retaining wall system so as not to collapse.

b.      Failure to provide the appropriate Tensar components as indicated on the Tensar stamped plans for the Tensar Mesa® retaining wall system.

c.      Failure to study, investigate, ascertain, impose or comply with reasonable standards and regulations to protect the person and

18

*Pycsa v. Tensar*

property of those interacting with the Tensar Mesa® retaining wall system.

    d.    Failure to design, manufacture and implement the Tensar Mesa® retaining wall system to be free of defects.

    e.    Failure to test the implemented components of the Tensar Mesa® retaining wall system to determine their safety and fitness for the task.

93.    Tensar breached its duty when it negligently manufactured and designed the Tensar Mesa® retaining wall system which resulted in extensive injury to Pycsa and to the public.

94.    The defective design and implementation of the Tensar Mesa® retaining wall system were the direct and proximate cause of the extensive damages suffered by Pycsa and the public.

95.    As a result of the breach, Pycsa has suffered damage including but not limited to cost of destruction and replacement of faulty Tensar Mesa® retaining wall system with non-faulty alternative at La Palmita, destruction or diminishment of value of its reputation as a contractor in Panama, cost of destruction and repair of the other bridge abutments utilizing the Tensar Mesa® retaining wall system, loss of construction time and stopped machinery costs, lost revenues due to delays in opening and operating tollway, and other damage that naturally and proximately resulted from the negligence described herein.

WHEREFORE, Pycsa respectfully requests this Court to enter judgment in its favor for damages against Defendant Tensar, together with costs and interest and other such relief as this Court deems just and appropriate under the circumstances.

19

*Pycsa v. Tensar*

## COUNT III - NEGLIGENT HIRING

96.     Plaintiff Pycsa repeats and realleges paragraphs 1 through 80 above.

97.     As the designer and component provider of the Tensar Mesa® retaining wall system at issue, Tensar had a duty to select and hire a qualified and responsible agent to implement the Tensar Mesa® retaining wall system at issue.

98.     Tensar breached its duty by negligently retaining Fundaciones as its agent to implement the Tensar Mesa® retaining wall system at issue despite the numerous failings in that implementation, which resulted in extensive injury to Pycsa and the public.  Tensar, through its agent Fundaciones, was negligent in, among other things, failing to ensure that the proper materials were shipped by Tensar, failing to ensure that the block mold matched the plans, failing to properly backfill the retaining wall, failing to properly maintain the integrity of the individual blocks, failing to install the blocks without excessive shimming, and failing to account for proper drainage.

99.     Tensar knew or should have known that its agent Fundaciones was not sufficiently qualified or capable of safely implementing the Tensar Mesa® retaining wall system at issue, and that such negligent retention would and did cause severe damage to Pycsa and the public.

100.    Tensar's negligent hiring of Fundaciones was the direct and proximate cause of the extensive damages Pycsa has suffered.

101.    As a result of Tensar's negligent hiring, Pycsa has suffered damages including but not limited to cost of destruction and replacement of faulty Tensar Mesa®

20

retaining wall system with non-faulty alternative at La Palmita, destruction or diminishment of value of its reputation as a contractor in Panama, cost of destruction and repair of the other bridge abutments utilizing the Tensar Mesa® retaining wall system, loss of construction time and stopped machinery costs, lost revenues due to delays in opening and operating tollway, and other damage that naturally and proximately resulted from the negligence described herein.

WHEREFORE, Pycsa respectfully requests this Court to enter judgment in its favor for damages against Defendant Tensar, together with costs and interest and other such relief as this Court deems just and appropriate under the circumstances.

## COUNT IV - NEGLIGENT SUPERVISION

102. Plaintiff Pycsa repeats and realleges paragraphs 1 through 80 above.

103. As the designer and component provider of the Tensar Mesa® retaining wall system at issue, Tensar had a duty to supervise the Tensar Mesa® retaining wall system and to ensure that it was implemented properly.

104. Tensar breached its duty by negligently supervising Fundaciones's implementation of the Tensar Mesa® retaining wall system at issue and by permitting the Tensar Mesa® retaining wall system to be implemented improperly, which resulted in extensive injury to Pycsa and the public.  Tensar, through its agent Fundaciones, was negligent in, among other things, failing to ensure that the proper materials were shipped by Tensar, failing to ensure that the block mold matched the plans, failing to properly backfill the retaining wall, failing to properly maintain the integrity of the individual blocks,

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

failing to install the blocks without excessive shimming, failing to account for proper drainage.

105.     Tensar knew or should have known that its agent Fundaciones negligently and improperly implemented the Tensar Mesa® retaining wall system, and that this negligent implementation would and did cause severe damage to Pycsa and the public.

106.     Tensar's negligent supervision was the direct and proximate cause of the extensive damages Pycsa has suffered.

107.     As a result of Tensar's negligent supervision, Pycsa has suffered damages including but not limited to cost of destruction and replacement of faulty Tensar Mesa® retaining wall system with non-faulty alternative at La Palmita, destruction or diminishment of value of its reputation as a contractor in Panama, cost of destruction and repair of the other bridge abutments utilizing the Tensar Mesa® retaining wall system, loss of construction time and stopped machinery costs, lost revenues due to delays in opening and operating tollway, and other damage that naturally and proximately resulted from the negligence described herein.

WHEREFORE, Pycsa respectfully requests this Court to enter judgment in its favor for damages against Defendant Tensar, together with costs and interest and other such relief as this Court deems just and appropriate under the circumstances.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

*Pycsa v. Tensar*

## DEMAND FOR JURY TRIAL

Plaintiff further demands a trial by jury as to all issues.

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Attorneys for Plaintiff
Suite 2200, Museum Tower
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395

By: _____
    Alexander Angueira
      Florida Bar No. 0716091
    Samuel O. Patmore
      Florida Bar No. 0096432
      (S.D. Fla. *Pro hac*
      motion forthcoming)

G:\w-lit\36538\003\Tensar complaint-REVISED.doc

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

06-20624

**I (a) PLAINTIFFS**

PYCSA PANAMA, S.A.

**DEFENDANTS**

TENSAR EARTH TECHNOLOGIES, INC.,
a Georgia corporation

**CIV - GOLD**

**MAGISTRATE JUDGE TURNOFF**

2006 MAR 13 PM 3:49
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

Dade 06-20624 CV-Gold
Turnoff

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

STEARNS WEAVER MILLER, ET AL.
150 West Flagler St., Suite 2200
Miami, FL 33130 (305)789-3200

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) | | (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) | |
|---|---|---|---|---|
| | | PTF  DEF | | PTF  DEF |
| ☐ 1. U.S. Government Plaintiff | ☐ 3. Federal Question (U.S. Government Not a Party) | Citizen of This State  ☐ 1  ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4  ☐ 4 |
| ☐ 2. U.S. Government Defendant | ☑ 4. Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐ 2  ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5  ☑ 5 |
| | | Citizen or Subject of a Foreign Country  ☐ 3  ☐ 3 | Foreign Nation | ☑ 6  ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Product Liability/Negligence Action; Diversity Jurisdiction 28 USC Sec 1332(a)

**IVa.** _____ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A  CONTACT | A  TORTS | B  FORFEITURE/PENALTY | A  BANKRUPTCY | A  OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A  PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander  ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability  **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine  ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability  ☐ 371 Truth in Lending  B | ☐ 660 Occupational Safety/Health | **A  SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits  B | ☐ 350 Motor Vehicle  ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability  ☑ 385 Property Damage Product Liability | **A  LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A  REAL PROPERTY** | **A  CIVIL RIGHTS**  **B  PRISONER PETITIONS** | ☐ 730 Labor/Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting  ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **A  FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment  Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations  ☐ 530 General | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare  ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights  ☐ 540 Mandamus & Other *  ☐ 550 Civil Rights  * A o B | | | ☐ 890 Other Statutory Actions * A o B |
| ☐ 290 All Other Real Property | | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☑ 1. Original Proceeding  ☐ 2. Removed From State Court  ☐ 3. Remanded from Appellate Court  ☐ 4. Refiled  ☐ 5. Transferred from another district (Specify)  ☐ 6. Multidistrict Litigation  ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23  **DEMAND $** _____  CHECK YES only if demanded in complaint: **JURY DEMAND:** ☑ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ DOCKET NUMBER _____

DATE 3/13/06

SIGNATURE OF ATTORNEY OF RECORD  ALEXANDER ANGUEIRA

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 93665b  Amount 250.00

Date Paid: 03/13/06  M/fp: